UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA   :     NO. 1:09-CR-00202
  :
     v.           :     **OPINION & ORDER**
  :
CAESAREA JAMES         :

      This matter is before the Court on Defendant's Motion to Dismiss Counts 1, 2, and 3 of the Indictment Based on the Fifth and Sixth Amendments (doc. 26); Defendant's Motion to Dismiss Count 2 for Failure to State an Offense (doc. 27); Defendant's Motion to Strike Surplusage (doc. 28); Defendant's Motion for Separate Trial on Count 3 (doc. 29); and Defendant's Motion for Separate Trial on Count 4 (doc. 30). The Government filed its responsive memoranda (docs. 34, 35, 36), and the Court held a hearing on these motions on September 22, 2010.

      Defendant was indicted by the federal grand jury on December 16, 2009, and a superseding indictment was filed against him on April 20, 2010. Count 1 of the April indictment charged Defendant with wire fraud, based on an alleged false statement on a mortgage application, in violation of 18 U.S.C. § 1343; Count 2 charged mail fraud, based on an alleged false statement on a mortgage application, in violation of 18 U.S.C. § 1341; Count 3 charged fictitious obligations, based on an alleged fraudulent check, in violation of 18 U.S.C. § 514(a); and Count 4 charged bankruptcy fraud. This matter is set for trial to begin on October 5, 2010.

      For the reasons that follow, the Court GRANTS Defendant's

Motion to Dismiss Counts 1, 2, and 3 of the Indictment Based on the Fifth and Sixth Amendments (doc. 26); DENIES Defendant's Motion to Dismiss Count 2 for Failure to State an Offense (doc. 27); GRANTS Defendant's Motion to Strike Surplusage in part and DENIES it in part (doc. 28); DENIES Defendant's Motion for Separate Trial on Count 3 (doc. 29); and DENIES Defendant's Motion for Separate Trial on Count 4 (doc. 30).

## I.   The Motion to Dismiss based on Duplicitous Indictment

Defendant moves to dismiss Counts 1, 2, and 3 of the superseding indictment on the basis that each count is duplicitous, in violation of the Fifth and Sixth Amendments to the United States Constitution (doc.  26).

### A. Counts I and 2: Wire and Mail Fraud

As to Counts 1 and 2, Defendant reads each count as charging him with two separate crimes.  Specifically, in Count 1, Defendant is explicitly charged with committing wire fraud in connection with the purchase of property in Ohio in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2 (doc. 21).  In addition, that count incorporates by reference the following allegation: "At or around...late 2006, Defendant...applied for a loan to purchase a car and submitted a fraudulent W-2 form and paycheck stub with the application.  The income claimed by Defendant...as part of the Ohio Property and Michigan Property purchases contradicted the income he claimed for the car loan application" (Id.).  In Count 2, Defendant is explicitly charged with mail fraud in connection with the

2

purchase of property in Michigan in violation of 18 U.S.C. § 1341 and 18 U.S.C. § 2 (Id.).  In addition, that count incorporates by reference the same car-loan allegation: "At or around...late 2006, Defendant...applied for a loan to purchase a car and submitted a fraudulent W-2 form and paycheck stub with the application.  The income claimed by Defendant...as part of the Ohio Property and Michigan Property purchases contradicted the income he claimed for the car loan application" (Id.).  Defendant argues that these counts therefore appear to join two distinct and separate offenses, which renders them duplicitous (doc. 26, citing United States v. Campbell, 279 F.3d 392, 398 (6th Cir. 2002)).

The Government argues that the indictment is not duplicitous because the reference to the income stated on the car loan application does not set forth a distinct offense but is merely a description of the many statements that the Defendant made that contradict his loan applications for the Ohio and Michigan properties (doc. 34).  Indeed, the Government contends that Defendant has not been charged with fraud with respect to the car purchase at all and that the statement regarding the car loan is meant only to illustrate the manner and means of Defendant's larger schemes to defraud.  In addition, to the extent any ambiguity exists, the Government contends that such ambiguity can be addressed either by striking the reference to the car loan from the indictment or by curative jury instructions (Id., citing United States v. Kakos, 483 F.3d 441, 443 (6th Cir. 2007)).

3

As Campbell warns, "collapsing separate offenses into a single count...'prevent[s] the jury from convicting on one offense and acquitting on another'." 279 F.3d at 398. Among others, Defendant directs the Court to United States v. Savoires, 430 F.3d 376 (6th Cir. 2005) as illustrative of the dangers of duplicitous indictments. In Savoires, the defendant was charged in relevant part with, in a single count, both carriage and possession of a firearm "during and in relation to and in furtherance of a drug trafficking crime...." 430 F.3d at 378. The statute at issue in the case was 18 U.S.C. § 924(c), which "criminalizes two separate and distinct offenses: '(1) using or carrying a firearm during and in relation to a drug trafficking crime, and (2) possessing a firearm in furtherance of a drug trafficking crime.'" Savoires, 430 F.3d at 377, quoting United States v. Combs, 369 F.3d 925, 930-33 (6th Cir. 2004). Because the indictment collapsed both subsections of 924(c)-the use or carriage during and in relation to of subsection (1) and the possession in furtherance of in subsection (2)-into one charge, the indictment was duplicitous. Savoires, 430 F.3d at 379-80. And, because the trial court's jury instructions similarly collapsed the subsections and did not clarify the duplicitous count, the appellate court reversed Savoires' conviction. Id. at 381.

The problem presented by Counts 1 and 2 is not as evident as that presented in Savoires. Whether Counts 1 and 2 here each contain two separate offenses is not entirely clear-they could be

4

interpreted, as the Government contends, to set forth only the wire fraud in Count 1 and the mail fraud in Count 2, with the reference to the car loan being there only as a factual allegation supporting the manner and means of the alleged fraudulent scheme related to the two pieces of real estate.  Or, as Defendant claims, Count 1 could be interpreted to set forth both a charge of wire fraud and a charge of fraud in relation to the car loan and, Count 2 could be interpreted to set forth both a charge of mail fraud and a charge of fraud in relation to the car loan.   But the existence of this ambiguity and confusion is exactly the point.   The allegation of fraud on the car loan is explicitly incorporated by reference into the wire fraud and the mail fraud charges, and incorporations by reference simply create confusion, especially when the statement incorporated explicitly references a crime.

Under other circumstances, the Court would be inclined to simply strike paragraph 12 from the indictment altogether or strike the statements in paragraphs 13 and 15 that it is incorporated by reference in order to eliminate the confusion its incorporation into Counts 1 and 2 creates.  However, the Court sees the issues presented by the incorporation of paragraph 12 as relating more to substance than form, and it admittedly confuses Defendant regarding what charges he faces in Counts 1 and 2.   The incorporation of paragraph 12 by reference is not merely an issue of form because we cannot know what was in the minds of the grand jury when it returned this indictment–i.e., we cannot know whether they believed

5

the Government had probable cause to charge Defendant with wire fraud, mail fraud and fraud on the car loan or whether they read the indictment as the Government does, that the Government was charging only wire and mail fraud. Consequently, striking paragraph 12 here is not an option the Court can choose. See Russell v. United States, 369 U.S. 749, 770 (1962)("[A]n indictment may not be amended except by resubmission to the grand jury, unless the change is merely a matter of form"); see also Combs, 369 F.3d at 935 (noting that modifying an indictment by amendment, "when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed on them," is per se prejudicial).

The Government would have the Court deny Defendant's motion and cure with jury instructions the ambiguity it created by incorporating paragraph 12 by reference. However, the Court finds that counting on curative jury instructions at this pretrial stage is not the best remedy. Now is the time to clear up the confusion, not just before the jury is charged.

The Court understands that the Government is trying to illustrate an alleged scheme of fraud occurring over a period of time and involving real estate, a car and bankruptcy petitions, but Defendant is entitled to be charged with each count specifically delineated, even if the indictment grows lengthy or appears to be repetitive.

**B.  Count 3: Fictitious Obligation**

6

In Count 3, Defendant is charged with violating both subsection (a)(1) and subsection (a)(2) of the fictitious obligations statute. Specifically, the indictment charges that he "did print, present, pass, offer, and produce or otherwise make" a fraudulent check in violation of 18 U.S.C. §§ 514(a)(1) and (2).

In its entirety, 18 U.S.C. § 514(a) reads:

Whoever, with the intent to defraud--
(1) draws, prints, processes, produces, publishes, or otherwise makes, or attempts or causes the same, within the United States;
(2) passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States; or
(3) utilizes interstate or foreign commerce, including the use of the mails or wire, radio, or other electronic communication, to transmit, transport, ship, move, transfer, or attempts or causes the same, to, from, or through the United States,
any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, a foreign government, a State or other political subdivision of the United States, or an organization, shall be guilty of a class B felony.

Defendant argues that, as with the indictment in Savoires, the indictment here collapses two distinct offenses into one count because Count 3 charges Defendant with both printing and producing a fraudulent check (a violation of subsection 1) and presenting, passing or offering the check (a violation of subsection 2).

The Government contends that this misreads the statute and that the disjunctive "or" between (a)(2) and (a)(3) simply

7

creates a break in a list of actions with respect to fictitious instruments, any of which violates the statute (doc. 34).  The Government distinguishes <u>Savoires</u> by noting that the statute at issue there, 18 U.S.C. § 924(c), sets forth two distinct offenses that cannot grammatically be combined: (1) the use or carriage of a firearm during and in relation to a crime and (2) the possession of a firearm in furtherance of a crime (<u>Id</u>.).  The Government further contends that, if the Court were to apply Defendant's logic, any indictment charging someone with a 924(c) violation for "us[ing] or carr[ying] a firearm" would be duplicitous because of the "or" between "use" and "carry" (<u>Id</u>.).  In any event, the Government states that it would be amenable to limiting the jury instructions for Count 3 to the "passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States" language of 514(a)(2) (<u>Id</u>.).

The Court finds Defendant's reading of the statute persuasive.  Section 514(a)(1) of Title 18 proscribes in relevant part printing and producing a false or fictitious instrument.  18 U.S.C. §514(a)(1).  Section 514(a)(2) proscribes in relevant part passing, presenting, and offering a false or fictitious instrument.  18 U.S.C. §514(a)(2).  These two subsections proscribe distinctly separate conduct and constitute distinctly separate crimes.  Subsection (a)(1) relates to somehow making the fictitious instrument while subsection (a)(2) relates to using it.  These are

8

distinct actions, and the subsections set forth myriad ways to describe each of those actions. One could print or draw or process, but in the end one makes the check. One could pass or utter or issue or present, but in the end one uses it. To, as here, charge a defendant with both printing and producing a fraudulent check (a violation of subsection 1) and presenting, passing or offering the check (a violation of subsection 2) in one count puts the jury in a position of not being able to convict him of presenting the check but acquit him of producing the check, which is the "vice of duplicity." See Campbell, 279 F.3d at 398.

It could be argued that, unlike with the gun statute in Savoires, any such risk, that a jury faced with the charge in Count 3 would not be able to convict Defendant of presenting the check but acquit him of producing the check, is reduced because either one of those actions is violative of the statute. In other words, assuming the requisite intent, if the jury finds that Defendant produced the check but did not present it, that is enough to convict. Similarly, if the jury finds that he presented it but did not produce it, a violation of the statute has still occurred. However, that same argument would apply to the gun statute: if a jury finds that a person possessed a gun in furtherance of a crime of violence but did not use it during and in relation to that crime, a violation of the statute nonetheless has occurred. The point is that when both printing and presenting a false check are charged in the same count, just as when both possession and use of

9

a gun are charged in the same count, "the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." United States v. Washington, 127 F.3d 510, 513 (6th Cir. 1997).

"The yardstick in determining whether there is duplicity or multiplicity is whether one offense or separate offenses are charged and ... this is a difficult and subtle question." United States v. Davis, 306 F.3d 398, 415, quoting 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 142, at 17 (3d ed. 1999). "The test announced most often in the cases is that offenses are separate if each requires proof of an additional fact that the other does not." Id.; United States v. Barnett, 418 F.2d 309, 312 (6th Cir. 1969). Here, different proof would be required to establish beyond a reasonable doubt that Defendant printed and produced a false check from that which would be required to establish that he passed, presented and offered that check.

The Government cites United States v. Kakos, 483 F.3d 441, 444 (6th Cir. 2007) for the proposition that any problems created by Count 3 can be cured by limiting the jury instructions to only the passing, presenting and offering language of (a)(2). There, the court noted, "A defendant moving [pretrial] can request that a duplicitous indictment be dismissed..., he can attempt to force the government to elect the charge within the count upon which it will rely, or he can ask the court to particularize the

10

distinct offenses contained within a count." Id., citing United States v. Shumpert Hood, 210 F.3d 660, 663 (6th Cir. 2000). Shumpert Hood notes that duplicity in an indictment is not fatal, 210 F.3d at 663, and cites United States v. Robinson, 651 F.2d 1188, 1194 (6th Cir. 1981), which notes that the rules regarding duplicity are pleading rules and, as such, the defendant's remedy is to move to require the prosecution to elect the charge within the count and that a duplicitous indictment is remediable by a jury instruction particularizing the offense charged in each count. The Court notes that Kakos, a 2007 case, appears to expand the remedies available to defendants, as, in addition to the Robinson remedy of moving the court to require the government to elect its charge, Kakos notes that defendants may elect to move to dismiss. Here, Defendant has clearly moved to dismiss, not to require the government to elect its charge, and the Court shall decide the motion before it. As with Counts I and 2, the Court can see no reason why the flaws in the indictment should not be cured before this case goes to trial as opposed to waiting, as the Government suggests, until the jury is charged. Kakos certainly permits this course of action.

**C. Conclusion**

Because of the confusion created by the incorporation of paragraph 12 into Counts I and 2, and because Count 3 contains two distinct charges, the Court hereby GRANTS Defendant's Motion to Dismiss Counts 1, 2, and 3 of the Indictment Based on the Fifth and

11

Sixth Amendments (doc. 26).  To be clear, the granting of this motion does not in any way impinge upon the Government's right or ability to seek a superseding indictment in this matter.

## II.  The Motion to Dismiss based on a failure to state an offense

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), Defendant moves the Court to dismiss Count 2 of the indictment on the basis that the count fails to state an offense (doc. 27).

Specifically, Defendant claims that the indictment does not properly allege that he used or caused another to use the mail to convey his allegedly false income information by the mails (Id.).  In addition, Count 2, according to Defendant, does not allege that the allegedly false information was mailed to the lender since the allegation is that the closing documents went to the settlement agent (Id.).

In response, the Government notes that the indictment alleges that Defendant "did place, deposit, or caused to be placed or deposited, a matter to be sent or delivered by the Postal Service or by any private or commercial interstate carrier, that is...the final closing documents...were shipped via UPS..." (doc. 34).  The Government contends that this allegation contains all of the elements of mail fraud and notes that Defendant has pointed to no authority for his position that a mail fraud charge requires an allegation that the false information _itself_ was conveyed by the mail (Id.).  Further, the Government argues that the Supreme Court

has held the opposite.  Specifically, the Government cites to Schmuck v. United States, 489 U.S. 705, 710-11 (1989), which held that the mailing does not need to be an essential part of the scheme to defraud but must only be incident to an essential part–a step in the plot-and that mailings without false information could satisfy the mailing element of mail fraud (Id.).  The Government argues that the purpose of Defendant's mail fraud scheme was to fraudulently purchase the Michigan property, which could not be done until closing, for which Defendant executed a number of documents and placed them in the mail to the title agent; mailing was therefore an essential step of the scheme (Id.).

The Court finds the Government's position here persuasive, and, in any event, as Defendant pointed out at the hearing, granting Defendant's motion to dismiss on the basis of a duplicitous indictment renders this motion moot.  Consequently, the Court DENIES Defendant's Motion to Dismiss Count 2 for Failure to State an Offense (doc. 27).

## III. The Motion to Strike

Pursuant to Federal Rule of Criminal Procedure 7(d), Defendant moves the Court to strike certain language from the indictment (doc. 28).  Specifically, Defendant argues that the inclusion in the caption of the indictment of the alias "Willy Beaver" is irrelevant and prejudicial because there is nothing to suggest the alias was used in relation to any of the counts in the indictment, and the use of an alias implies wrongdoing (Id.).  In

13

addition, Defendant moves the Court to strike from Count 4 of the indictment references to a foreclosure action on the property in Ohio. Specifically, Defendant takes issue with the inclusion of the statements that (i) his allegedly fraudulent bankruptcy petition was filed "while the foreclosure action for the Ohio Property was pending," and (ii) "[t]he filing of this bankruptcy petition operated to stay the pending foreclosure proceeding for the Ohio Property," arguing that these statements bear no relevance to the crime Defendant is actually charged with and serve only to imply that Defendant was engaged in other improper acts besides the charges he faces in this indictment (<u>Id</u>.).

In response, the Government does not object to striking "Willy Beaver" from the indictment (doc. 35). However, the Government contends that the references to the foreclosure proceeding are relevant to the charges filed and argues they should not be stricken (<u>Id</u>.). Specifically, the Government alleges that Defendant bought the Ohio house fraudulently (which is the basis for Count 1), filed for bankruptcy, blocked a sheriff's sale with the use of a fraudulent check (the basis for Count 3), and then fraudulently filed bankruptcy again (Count 4), all of which demonstrates Defendant's motive and desperation to hold onto the Ohio property despite the foreclosure (<u>Id</u>.).

The Court finds that the use of the alias "Willy Beaver" here is irrelevant and therefore GRANTS Defendant's motion as to the use of that alias. However, because the Court finds that the

14

references to the foreclosure are relevant at least with respect to Counts 3 and 4, the Court DENIES Defendant's motion to strike references to the foreclosure of the Ohio property.

## IV. The Motions for Separate Trials for Counts 3 and 4

Defendant moves the Court to sever Count 3, the fictitious obligation charge, and Count 4, the bankruptcy fraud charge, from the remaining counts, arguing that they were improperly joined because they are not "of the same or similar character, or based on the same act or transaction, or...connected with [and do not] constitute parts of a common scheme or plan" (docs. 29, 30, citing Fed. R. Crim. P. 8(a)).

Specifically, Defendant notes that the offenses alleged in Counts 1 and 2, the wire and mail fraud charges, occurred in 2006 in connection with the purchase of two properties, whereas the allegedly fraudulent check was presented at the sheriff's sale in 2009 and the alleged bankruptcy fraud likewise occurred in 2009 and, Defendant contends, was unconnected to the purchase of the properties. Defendant therefore argues that the four offenses are not connected temporally or by a common scheme or plan, and the evidence and witnesses necessary to prove Counts 3 and 4 are entirely different from those necessary to prove Counts 1 and 2 (Id., citing United States v. Chavis, 296 F.3d 450, 458-60 (6th Cir. 2002)).

The Government contends that from the time he purchased the properties at issue, Defendant compounded the fraud by trying

15

to thwart the foreclosure proceedings in Ohio (by passing the fictitious check) and fraudulently filing for bankruptcy (Count 4), actions that demonstrate his desire to keep the fraudulently obtained properties by any means (doc. 36). In short, the Government argues that joinder was proper and <u>Chavis</u> inapposite because, here, Defendant's crimes involve the same properties, the same victim, and are of a similar character because they all involve fraudulent statements and documents made by Defendant (<u>Id</u>.).

Further, the Government argues that severance is not the appropriate remedy here because Defendant has shown no risk of prejudice, which the Government contends is required for severance under <u>Zafiro v. United States</u>, 506 U.S. 534, 539 (1993).

First, the Court notes that the Government's reliance on <u>Zafiro</u> is misplaced because <u>Zafiro</u> dealt with joinder of <u>defendants</u> under 8(b) and this case presents joinder of <u>counts</u> under 8(a), and a showing of prejudice is not a requirement to sever counts under 8(a). Nonetheless, the Court finds the Government's arguments regarding the propriety of joinder persuasive. Counts 1, 3 and 4 all relate to the Ohio property, implicate the same victim (the lender), involve similar evidence and witnesses and are connected by a similar motive-to purchase and retain the property by any means, even fraudulent ones. Count 2 is temporally connected and connected in motive, manner and means to Count 1. Thus, the counts presented in the indictment are of the same or similar character

16

and/or they constitute part of a common scheme or plan such that
joinder was proper. Fed. R. Crim. P. 8(a).

Chavis is unavailing to Defendant here. In Chavis, the
defendant was charged with having possessed cocaine base in 1999
and having purchased a handgun in 1997. Chavis, 296 F.3d at 458.
The court noted that nothing in the indictment or the record
indicated that Chavis possessed or used the handguns in connection
with the possession of the cocaine base, nor was there a "common
thread of an overarching criminal scheme" connecting the two
offenses. Id. Here, however, Counts 1, 2, 3 and 4 are linked
together by the overarching criminal scheme of Defendant allegedly
committing fraud to obtain two properties, which he then committed
more fraud to hold on to. Defendant allegedly submitted falsified
documents to obtain the loans to buy the properties, then submitted
a false check and filed a bankruptcy petition with false
information to forestall foreclosure on one of them. This is a far
cry from utterly unrelated drug and gun charges. Any temporal
disconnection among the events leading to the charges against
Defendant is collapsed by the "common thread" of fraud running
continually throughout the time period at issue here.

In addition to his Rule 8(a) argument, Defendant argues
pursuant to Federal Rule of Criminal Procedure 14 that joinder of
Counts 3 and 4 would prejudice him because references to
foreclosure and bankruptcy in mortgage fraud cases is more
prejudicial than probative (docs. 29, 30). To support this

position, Defendant cites this Court's Opinion and Order in <u>United States v. Corsmeier</u>, 2007 WL 1461788 (S.D. Ohio May 16, 2007)(jury's verdict vacated and case remanded on unrelated evidentiary grounds), where the Court prevented the Government from introducing foreclosure evidence in its case in chief. In <u>Corsmeier</u>, the Government asked the Court to take judicial notice of the fact that twenty-eight properties related to the mortgage loans at issue in the case were then in foreclosure or had been foreclosed on. The defendant sought to exclude the evidence on the basis that it was irrelevant and prejudicial. The Court found that, under those circumstances, the evidence was irrelevant and unduly prejudicial and did not allow it in. Here, however, the evidence of foreclosure of the Ohio property is highly relevant to at least Count 3, where Defendant is alleged to have used a false check to buy the house back at the sheriff's sale related to the foreclosure, and to Count 4, where the Government alleges that Defendant's motive in presenting false information on his bankruptcy petition was to forestall the foreclosure. As to prejudice, the Court does not find well-taken Defendant's implication that the Court has issued a bright-line decision that foreclosure references in mortgage fraud cases are inherently prejudicial. Each case requires its own analysis with respect to evidentiary matters.

In assessing the propriety of severance under Rule 14, the Court must balance the public's interest in avoiding multiple

trials with the defendant's interest in a fair trial.  United States v. Wirsing, 719 F.2d 859, 864-65 (6th Cir.1983).  As a general rule, severance should be granted only if a defendant can show "substantial," "undue," or "compelling" prejudice.  United States v. Warner, 971 F.2d 1189, 1196 (6th Cir. 1992).  In light of the preference for joint trials, when joinder is proper under Rule 8, a court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539 (1993).

Here, Defendant argues that if the jury hears that the Ohio property went into foreclosure the jury will infer that Defendant misstated his income on the loan application because he could not make the mortgage payments, thus making the jury more likely to convict him of Count 1 on the basis of evidence relating to Count 3.  However, other than Corsmeier, which was factually completely distinct, Defendant has offered nothing to support this speculation.  His speculation does not rise to the level of a showing of substantial, compelling prejudice.  A "jury is presumed capable of sorting out evidence and considering each count and each defendant separately."  United States v. Swift, 809 F.2d 320, 323 (6th Cir. 1987) (affirming joint trial of defendants when much of the evidence was admissible against all defendants and trial court instructed jury to give each defendant separate consideration).

19

Defendant has not offered anything compelling the Court to find this presumption overcome here.  In any event, any potential risk of prejudice can be cured by limiting jury instructions.  <u>See</u>, <u>e.g.</u>, <u>United States v. Reynolds</u>, 70 F.3d 116 (6th Cir. 1995).

For the foregoing reasons, Defendant's Motion for Separate Trial on Count 3 (doc. 29) and Defendant's Motion for Separate Trial on Count 4 (doc. 30) are DENIED.

## V. Conclusion

As noted above, the Court GRANTS Defendant's Motion to Dismiss Counts 1, 2, and 3 of the Indictment Based on the Fifth and Sixth Amendments (doc. 26); DENIES Defendant's Motion to Dismiss Count 2 for Failure to State an Offense (doc. 27); GRANTS Defendant's Motion to Strike Surplusage in part and DENIES it in part (doc. 28); DENIES Defendant's Motion for Separate Trial on Count 3 (doc. 29); and DENIES Defendant's Motion for Separate Trial on Count 4 (doc. 30).

Therefore, Counts 1, 2 and 3 of the indictment are dismissed, and the Government is directed to strike "Willy Beaver" from the indictment.  Count 4 of the indictment remains unchanged. The October 5, 2010 trial date was vacated by the Court at the hearing to allow the Court time to review the motions.  Because Defendant remains indicted under Count IV, the Court SETS trial on that count to begin on October 26, 2010, at 9:30 A.M.

SO ORDERED.

Dated: September 23, 2010      /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge