UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**UNITED STATES OF AMERICA,**                                   Case No. 1:09-cr-202

v.

**CAESAREA DEVELLE JAMES, JR.**

## OPINION AND ORDER

This matter is before the Court on Petitioner Caesarea Develle James, Jr.'s Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 109) and the Government's response (Doc. 111), as well as Petitioner's Motion for Leave to File Supplemental Motion under 28 U.S.C. § 2255 (Doc. 129), Petitioner's Motion for Leave to File Supporting Affidavit (Doc. 135), the Government's response (Doc. 137), and Petitioner's additional supporting memorandum (Doc. 143).[1]

### I.     BACKGROUND

The factual and procedural background of the case is set forth in the August 24, 2012 decision from the Sixth Circuit as follows:

> In 2006, James acquired a residence in Clarkston, Michigan (the "Michigan residence") with two loans from WMC Mortgage Corporation ("WMC") totaling $650,000. Exactly two weeks later, James acquired a residence in Springboro, Ohio (the "Ohio residence") with two loans from Guaranteed Rate, Inc. ("Guaranteed") totaling $715,000.
>
> To obtain financing from both lenders for both residences, James provided WMC and Guaranteed with representations of his income, employment, liabilities, and occupancy. In addition, James provided both lenders with a copy of a federal tax return for 2005 in which he represented substantial income. James fully financed both the Michigan and the Ohio residences, and he defaulted on both mortgages almost immediately. Notably,

---

[1] Document 143 is characterized on the docket as an additional supporting memorandum, but is labeled a "Notice of Appeal of Detention Order."

1

the 2005 tax return James provided WMC and Guaranteed was in stark contrast to a car loan application that James had submitted four months earlier, where he claimed a much more modest income.

James filed for bankruptcy in 2007, thereby triggering an automatic stay and delaying foreclosure proceedings against the Michigan and Ohio residences. After the bankruptcy stay was lifted against the Ohio residence, the bankruptcy trustee began foreclosure proceedings. James outbid Guarantee at the sheriff's sale for the Ohio residence and won the auction. James paid the 10 percent down payment on the Ohio residence with a fake check that soon bounced. James filed for bankruptcy again in 2009, while the 2007 bankruptcy petition was still pending. On his 2009 petition, James answered "N/A" in response to the form's instruction to cite all prior bankruptcy cases filed within the last eight years.

Shortly thereafter, the FBI investigated James's conduct regarding the Michigan and Ohio residences. Among other things, the investigation revealed "numerous inconsistencies between the various fraudulent documents that James had created, including the loan applications and bogus tax documents" used to finance the Michigan and Ohio residences. . . . James was subsequently indicted for wire fraud and mail fraud based on the fraudulent documents that James had created in connection with the Michigan and Ohio residences. Additionally, James was charged with passing a fictitious obligation based on the fake check he used at the sheriff's sale.

With respect to the fraud allegations, the indictment charged that James had submitted a 2005 tax return to WMC and Guaranteed that was never filed with the IRS. Twelve days after James's indictment and arrest, he mailed a package of documents to the IRS. The package included: (1) a copy of a 2005 tax return that James submitted to WMC and Guaranteed; (2) a W-2 form from an employer called National Security Computer in support of James's income claim; and (3) a letter from accountant Brian Curry saying that he prepared and filed James's 2005 tax return in 2006.

Pursuant to the superseding indictment, James also faced a fourth charge of making false oaths during a bankruptcy proceeding. Before James proceeded to trial, he filed motions to sever his four-count indictment into three separate trials. The district court denied James's motions in a well-reasoned opinion. Ultimately, James received two trials. First, James was tried and convicted of making false statements in bankruptcy. James then proceeded to a second trial on the wire fraud, mail fraud, and passing a fictitious obligation charges. At trial, James's main defense was that no wire or mail fraud occurred because Guaranteed and WMC were not defrauded. Rather, James argued, Guaranteed and WMC "were 'eyes wide open' partners in the scheme, and, as co-conspirators, could not be victims." James also submitted proposed jury instructions to this effect, which the district court

> rejected. Ultimately, a second jury convicted James of wire and mail fraud, but was unable to reach a verdict on the fictitious instrument charge.

*United States v. James*, 496 F. App'x 541, 543-44 (6th Cir. 2012); *see also* (Doc. 128, PageId 2315-17).

On June 21, 2011, this Court sentenced James to 51 months imprisonment and 3 years of supervised release on Counts 1, 2, and 4. (Doc. 102). James filed a direct appeal of the judgment on June 30, 2011. (Doc. 104). On July 19, 2011, James filed his *pro se* § 2255 motion. (Doc. 109). The Sixth Circuit thereafter affirmed the judgment of the district court on the direct appeal. *James*, 496 F. App'x at 543; *see also* (Doc. 128).[2]

On September 4, 2012, James filed a *pro se* motion for leave to file a supplemental § 2255 motion. (Doc. 129). On September 21, 2012, James filed a motion for leave to file a supporting affidavit for the § 2255 motion. (Doc. 135). On May 2, 2013, James filed a supporting memorandum. (Doc. 143).[3]

**II.    § 2255 STANDARD**

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). To prevail on a § 2255 motion alleging constitutional error, the prisoner must show that the error had a substantial and injurious effect or influence on the proceedings.

---

[2] Following the judgment, James also appealed this Court's denial of his motions for bond (Doc. 113; Doc. 149), and the Sixth Circuit affirmed twice (Doc. 128; Doc. 152).

[3] On April 6, 2015, James was released from BOP custody. *See* Federal Bureau of Prisons, Inmate Locator, at http://www.bop.gov/inmateloc. James, however, also was sentenced to three years of supervised release. A prisoner's action is not mooted merely because he was released from prison when he also is serving a term of supervised release. *See Kusay v. United States*, 62 F.3d 192 (7th Cir. 1995); *see also United States v. Williams*, No. 02-CR-80958, 2007 U.S. Dist. LEXIS 48098, at 2 n.1 (E.D. Mich. July 2, 2007) (relying on *Kusay* and finding a § 2255 motion is not moot when the defendant has been released from physical confinement but still is serving his supervised release term).

*Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005). A § 2255 motion may not be used to relitigate an issue raised and considered on direct appeal absent highly exceptional circumstances. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999).

If a prisoner fails to raise a claim on direct appeal, then that claim generally is procedurally defaulted. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). To obtain review of a defaulted claim in a § 2255 motion, the prisoner must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation, or that he is actually innocent. *Bousely*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700.

Pursuant to 28 U.S.C. § 2255(f), there is a one-year statute of limitations for filing a motion to vacate, set aside, or correct a sentence. That limitation period shall run from the latest of:

    (1) The date on which the judgment of conviction becomes final;

    (2) The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

    (3) The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4) The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

### III. <u>ANALYSIS</u>

Here, the Court will consider both James's original § 2255 motion as well as his supplemental § 2555 and affidavit. Although the original § 2255 motion initially was premature,

it is proper to consider it now that the appeals have concluded, along with the supplemental § 2255 motion which was timely filed.

In the § 2255 motions, Defendant raises multiple issues. Those issues are addressed below.

### A. Defective Indictment

James argues that there were several defects in the indictment that resulted in a violation of his due process rights. For the reasons set forth below, his arguments are not well taken.

As none of the arguments concerning a defect in the indictment were raised on direct appeal, they are procedurally defaulted unless James has shown cause and actual prejudice, or that review is necessary to prevent a fundamental miscarriage of justice. He has not done so here. The Second Superseding Indictment was filed well before trial such that James and his counsel had notice of any purported defects prior to the time for appeal but those issues were not raised. His stated inability to communicate with his attorney from jail does not present sufficient cause for failure to raise it on direct appeal. *See Bousley*, 523 U.S. at 622; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986) (indicating that "default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim" and that "cause" must ordinarily turn on whether the petitioner can show "some objective factor external to the defense impeded counsel's efforts to comply"); *Broom v. Mitchell*, 441 F.3d 392, 401 (6th Cir. 2006) (relying on *Murray*).[4] Accordingly, the claims based upon defects in the indictment are procedurally defaulted.

Even assuming *arguendo* that the claims are not procedurally defaulted, James still has not met his burden under § 2255. First, James contends that the indictment was defective

---

[4] Notably, James does not raise a claim for ineffective assistance of counsel here.

5

because the element of "materiality" was not described in the wire fraud, mail fraud, or false oaths in bankruptcy counts. That argument is flawed. Even though materiality is a requisite element of mail and wire fraud and false oaths, the term "materiality" need not be used in the indictment. *United States v. McAuliffe*, 490 F.3d 526, 531-32 (6th Cir. 2007); *United States v. Overmyer*, 867 F.2d 937, 950 (6th Cir. Ohio 1989); *United States v. Gellene*, 182 F.3d 578, 587 (7th Cir. 1999). "Materiality" is part and parcel of the word "fraud" or "false," and "materiality" can be inferred from the allegations in the indictment. *McAuliffe*, 490 F.3d at 532. Contrary to James's argument, the indictment as a whole supports the Government's position that Counts 1, 2, and 4 of the Second Superseding Indictment are sufficient, as the language follows the applicable statutes, each count includes the term "defraud" or "false," and each count contains allegations from which it may reasonably be inferred that the fraud or falsity at issue was material. (Doc. 45, PageId 553-57). Count 4 also indicates that the falsity related to "material matters." (Doc. 45, PageId 557). Additionally, the element of materiality was included in the Final Jury Instructions for each of the three counts. (Doc. 84, PageId 729-31, 733-35; Doc. 122, PageId 2197). The jury thus has the opportunity to decide whether the Government met its burden of proving that element, and the jury ultimately decided in the Government's favor on that issue by returning a guilty verdict on Counts 1, 2 and 4. As such, the alleged error did not rise to the level of a fundamental defect nor did it have a substantial and injurious effect on the proceedings.

Second, James argues that the indictment was duplicitous. As pointed out by the Government, however, the duplicity issue was ruled upon with respect to the first superseding indictment. (Doc. 43). The grand jury thereafter returned the Second Superseding Indictment that addressed the duplicity issues identified by the Court. (Doc. 45). The duplicity issue thus

was remedied before trial and was not raised again.  It thus was not a fundamental defect and it did not have a substantial and injurious effect on the proceedings.

Third, James argues that the indictment was defective because the alleged victim was not properly identified.  In particular, James contends that Guaranteed Rate and WMC Mortgage were not the actual victims because they were not licensed in Ohio and did not actually lend the funds.  Both lenders testified at trial, however, that they provided the funds for the loans that were the subject of the charges and suffered a loss.  (Doc. 115, PageId 1406-08, 1424, 1544-55, 1574-75).  The indictment thus is consistent with the evidence presented at trial.  Accordingly, the alleged error did rise to the level of a fundamental defect nor did it have a substantial and injurious effect on the proceedings.

Fourth, James contends that the indictment was defective because it failed to state that it was foreseeable that his action would cause an interstate communication.  That argument is flawed.  Even though foreseeability is a part of mail and wire fraud, the term is not included in the statute itself and need not be used in the indictment.  *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997); *see also United States v. Martinez*, 588 F.3d 301, 316 (6th Cir. 2009), 18 U.S.C. §§ 1341, 1343.  Contrary to James's argument, the indictment as a whole supports the Government's position that Counts 1 and 2 of the Second Superseding Indictment are sufficient, as its language follows the statutes, and it contains allegations from which it may reasonably be inferred that the interstate communication was foreseeable.  (Doc. 45, PageId 554-56).  Further, James has not shown that the alleged error rose to the level of a fundamental defect or had a substantial and injurious effect on the proceedings.  The issue of foreseeability was included in the Final Jury Instructions for each of the three counts.  (Doc. 84, PageId 731, 735).  The jury thus has the opportunity to decide whether the Government met its burden of proving that

7

element, and the jury ultimately decided in the Government's favor on that issue by returning a guilty verdict on Counts 1 and 2.

In any event, "the general rule is that a defendant cannot attack an indictment in a § 2255 proceeding unless the indictment is so defective on its face that it does not charge an offense under any reasonable construction." *United States v. Smith*, 815 F.2d 81 (table), 1987 U.S. App. LEXIS 1727, at *2 (6th Cir. 1987) (citing *Eisner v. United States*, 351 F.2d 55, 56 (6th Cir. 1965), *disapproved on other grounds*, *Kaufman v. United States*, 394 U.S. 217, 220 (1969)). The alleged errors in the indictment were not so defective. Accordingly, James may not obtain relief under § 2255 on any of the above grounds.

### B. Purported *Brady* Violations

James argues that the Government suppressed exculpatory evidence prior to trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). James identifies the following as the allegedly undisclosed evidence: (1) the case *Logan v. WMC Mortgage Corp.*, 410 B.R. 270 (Bankr. S.D. Ohio August 14, 2009), wherein WMC failed to properly notarize a signature; (2) a case from an Illinois court in 2010 where Guaranteed Rate was found guilty of conspiracy to commit mortgage fraud; (3) information that WMC and Guaranteed Rate violated Ohio law because they did not possess a broker's license or office in Ohio; (4) information that the mortgages obtained by James were financed by a mortgage-backed security pool agreements with insurance for loss and fraud; and (5) information that WMC and Guaranteed Rate were not the real lenders and did not suffer any real losses.[5]

As with the prior claims of a defective indictment, none of those alleged *Brady* violations were raised on direct appeal and thus are procedurally defaulted absent cause and actual

---

[5] Issue (5) also is phrased as a defective-indictment issue, which was addressed above.

prejudice, which have not been shown. Nonetheless, upon consideration on the merits, the Court concludes that none of the arguments entitle James to relief under § 2255.

### 1. First alleged violation

James contends that the Government did not disclose *Logan*, 410 B.R. 270, in violation of *Brady*. In *Logan*, a bankruptcy judge disallowed WMC's mortgage on a debtor's property because the notary public omitted the debtor's name on a certificate of acknowledgement and then later recertified it without obtaining the debtor's re-acknowledgement. James argues that the same thing happened in his case and the Government was obligated to disclose the decision under *Brady*. The Court disagrees.

A successful *Brady* claim requires that evidence "favorable to the accused, either because it is exculpatory, or because it is impeaching . . . must have been suppressed by the State, either willfully or inadvertently, and prejudice must have ensued." *Cauthern v. Colson*, 736 F.3d 465, 481 (6th Cir. 2013). Here, *Logan* did not involve the same notary public or witnesses as James's case. For that reason, *Logan* does not constitute *Brady* evidence.

Further, "'*Brady* is concerned only with cases in which the government possesses information which the defendant does not.'" *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2001) (citing *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994)). "[T]here is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." *Carter*, 218 F.3d at 601 (citing *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991)). Here, James has not shown that the Government was aware of the *Logan* decision or that the *Logan* decision was not equally available for the defense to obtain from a source other than the Government.

9

Accordingly, James may not obtain relief under § 2255 on this ground.

### 2. Second alleged violation

James argues that Guaranteed Rate was found guilty of conspiracy to commit mortgage fraud by an Illinois court in 2010. It appears that James is referring to *Edalatdju v. Guaranteed Rate, Inc.*, 748 F. Supp. 2d 860 (N.D. Ill. 2010), a decision issued a few months prior to James's trial in the Southern District of Ohio. This argument suffers from the same flaws as the first alleged violation.

The circumstances presented in *Edalatdju* are different than those in James's case. *Edalatdju* was a civil case in which a plaintiff sued an appraiser and Guaranteed Rate alleging fraud and civil conspiracy under state law. Guaranteed Rate filed a motion to dismiss under Civil Rule 12. The district court granted Guarantee Rate's motion as to the fraud claim but denied the motion as to the conspiracy. The ruling addressed only whether the complaint stated a cause of action upon which relief could be granted and did not reach a final determination on the merits of the case. For that reason, disclosure was not required under *Brady*. Further, similar to the first alleged violation, James has not shown that the Government was aware of the *Edalatdju* decision or that the *Edalatdju* decision was not equally available for the defense to obtain from a source other than the Government. *See Carter*, 218 F.3d at 601.

Accordingly, James may not obtain relief under § 2255 on this ground.

### 3. Third, fourth, and fifth alleged violations

The third, fourth, and fifth alleged violations essentially raise the same arguments that Defendant raised prior to trial in his *pro se* Motion for Dismissal of the Indictment. (Doc. 33). In that motion, he argues that Guaranteed Rate and WMC did not own the notes or mortgages, that the lenders were not the actual holders of the loans, that the lenders falsified James's

signatures, that the lenders did not have an office in Ohio, and that the notarized signatures violated state law. (Doc. 33).

*Brady* applies only when there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Carter*, 218 F.3d at 601 (citing *Brady*, 373 U.S. at 87). As stated above, "there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question . . . ." *Carter*, 218 F.3d at 601 (citing *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991)). James's arguments demonstrate that he knew of the information and issues prior to trial and could have used that information in his defense. The Court is not persuaded that the result of the proceeding would have been different but for any alleged failure to disclose that information.

Accordingly, James may not obtain relief under § 2255 on any of these three grounds.

### C. Alleged Perjury or Forged Documents by Lenders

James argues that the witnesses on behalf of Guaranteed Rate and WMC committed perjury at trial by stating that they were the true lenders of the funds. Defendant also specifically points to Guaranteed Rate's response to James' Motion for Summary Judgment in Case No. 1:09-cv-0067 at the top of page 9 wherein he contends there is an admission of perjury. James's arguments essentially are a rehash of several of his *Brady* claims.

First, James's claim is improperly raised in this § 2255 motion. A § 2255 motion may not be used to relitigate an issue raised and considered on direct appeal absent highly exceptional circumstances, and when the claim is not raised on direct appeal it generally is procedurally defaulted. *Wright*, 182 F.3d at 467; *Bousely*, 523 U.S. at 622-23; *Peveler*, 269 F.3d at 698.

11

Nothing in James's arguments indicates any circumstances that would permit consideration of this claim in a § 2255 motion.

Second, the claim would fail on the merits because James has not met his burden under the requisite § 2255 standards. As explained previously, both lenders testified at trial that they provided the funding for the subject loans and suffered a loss. (Doc. 115, PageId 1406-08, 1424, 1544-55, 1574-75). James has presented no evidence to contradict that testimony presented at trial.

As for James's additional contention that the government witnesses falsely testified as to James's signing of the loan documents, the portion of the document referenced by James does not contradict the evidence presented at trial. The government witnesses had documents in their file for all of the loans containing James's signature and they produced copies of James's driver's license and Social Security card that he provided as identification at the closings. (*See* Doc. 115, PageId 1414-15, 1571-72).

Accordingly, James may not obtain relief under § 2255 on these grounds.

D. **False Statements in Bankruptcy Conviction**

James argues that his answer of "N/A" in response to the question about prior bankruptcy petitions is explainable and does not equate to the answer "no." Further, James contends that the "N/A" statement demonstrates that he did not knowingly mislead the bankruptcy court. The arguments are not well taken.

Absent highly exceptional circumstances, a § 2255 motion may not be used to relitigate issues raised on direct appeal. *Wright*, 182 F.3d at 467. On appeal, James argued that the Government failed to present sufficient evidence to convict him of the bankruptcy charge under 18 U.S.C. § 152(3). The Sixth Circuit rejected James's argument, stating, in pertinent part:

> The record reveals that there was sufficient evidence to convict James of violating § 152(3). To begin, James filed for bankruptcy four times in a six-year period. James first filed bankruptcy petitions in Michigan in 2003 and 2004. Then, after purchasing the Ohio and Michigan residences, James filed a petition for bankruptcy in Ohio in 2007 and obtained a discharge of debts in 2008. On August 17, 2009, while his 2007 petition for bankruptcy was still pending, James filed yet another petition for bankruptcy (the "2009 bankruptcy petition"). On his 2009 bankruptcy petition, James wrote "N/A" under the heading "All Prior Bankruptcy Cases Filed Within Last 8 Years" and signed the 2009 petition under penalty of perjury. Collectively, these facts establish that James knowingly and fraudulently made a false statement in relation to his 2009 bankruptcy petition.
>
> James's arguments to the contrary are unavailing. First, James argues that the Government failed to establish that "it was James that signed and filed the 2009 bankruptcy petition from which the alleged false statement was taken, which is the basis of this count of the indictment." Defendant-Appellant Br. at 17. Yet, as the Government makes clear, there is substantial evidence to the contrary. . . . Given these facts, a rational juror could have found that James was the individual who signed and filed the 2009 bankruptcy petition.
>
> Second, James argues that "a bankruptcy case [must] be 'pending' at the time of false statement." Defendant-Appellant Br. at 18. James's argument is incompatible with a plain reading of the statute, which nowhere imposes a sequential requirement for when the false statement must be made. . . . Both the statute and this Circuit's law indicate that a rational juror could find adequate evidence to convict James of violating § 152(3).
>
> Finally, James asserts that "the Government did not prove that the statement was fraudulent." Defendant-Appellant Br. at 19. Toward this end, James argues that "the evidence tended to suggest that the filing was never intended to be a 'new' bankruptcy, but was instead an imprecise attempt to respond to a filing in the [2007 bankruptcy]." *Id.* James also makes the point that "'N/A' is not the same as 'none' . . . rather, it indicates that the prior bankruptcies were irrelevant to the instant filing." *Id.* at 19-20. Even assuming both these arguments are true, neither is availing. Indeed, James's points ultimately lend further credence to the conclusion that a rational juror could find adequate evidence to convict James of violating § 152(3).

*James*, 496 F. App'x at 550-51; *see also* (Doc. 128, PageId 2327-29). As James's argument here is nothing more than a rehash of the argument previously raised and rejected by the Sixth Circuit, there are no highly exceptional circumstances that permit James to relitigate the issue in a § 2255 motion.

Accordingly, James may not obtain relief under § 2255 on this ground.

### E. Evidence of Wire Transmissions

James argues that the "telex" records of the bank transactions used at trial were inadmissible hearsay. This claim is procedurally defaulted because it was not raised at the district court or the appellate court level and James has not met his burden of showing the procedural defaults should be excused.

In any event, James's claim as to admission of alleged hearsay is insufficient to satisfy the requisite standards for a claim brought pursuant to § 2255. The exhibits referring to the wire transmissions were admitted at trial as business records under Fed. R. Evid. 803(6) without objection from the defense. (Doc. 115, PageId 1478-79; Doc. 116, PageId 1624-25). A review of the testimony and exhibits further demonstrates that the documents indeed satisfied the business records exception in Rule 803(6).

Accordingly, James may not obtain relief under § 2255 on this ground.

## IV. CONCLUSION

Consistent with the foregoing, James is **GRANTED LEAVE TO FILE** the supplemental § 2255 motion and the supporting affidavit (Docs. 129, 135).

However, pursuant to 28 U.S.C. § 2255(b), the Court determines that the instant motion and the files and records of this case conclusively show that James is not entitled to relief, and therefore, a hearing is not necessary to determine the issues and make the findings of fact and conclusions of law with respect thereto. *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003). The claims raised are conclusively contradicted by the record and the law of the Sixth Circuit and the United States Supreme Court. Accordingly, James's Motions under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence (Doc. 109) and Supplemental Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 129) are **DENIED**.

Further, the Court will not issue a certificate of appealability. The Court concludes that none of the claims raised by James in his § 2255 motions are debatable among reasonable jurists, could be resolved differently on appeal, or are adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). In addition, Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c); *see also* Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

                                                                                   s/Michael R. Barrett
                                                                                   JUDGE MICHAEL R. BARRETT
                                                                                   UNITED STATES DISTRICT COURT